# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In the Matter of: }<br>STEPHEN TIMOTHY VICKREY }<br>SSN: XXX-XX-0444 }<br>VALORIE LYNN VICKREY }<br>SSN: XXX-XX-4058, }<br>    }<br>    Debtor(s). } | CASE NO. 18-80048-CRJ-7<br><br>CHAPTER 7 |
| JERRY HOLT, JR. }<br>    Plaintiff(s), }<br>  v. }<br>    }<br>STEPHEN T. VICKREY }<br>    Defendant(s). } | A.P. No. 18-80057-CRJ-7 |

## MEMORANDUM OPINION ON COMPLAINT
## TO DETERMINE DISCHARGEABILITY

This Adversary Proceeding came before the Court for trial on September 11, 2018 upon the Complaint to Determine Dischargeability of Certain Claims, Debts and/or Other Obligations filed by the Plaintiff, Jerry Holt, against the Stephen Vickrey, pursuant to 11 U.S.C. § 523(a)(2)(A), (4), and (6). As a preliminary matter, the Court questioned whether the Plaintiff also seeks a determination of nondischargeability against the Joint-Debtor, Valorie Lynn Vickrey, as it is not clear from the Complaint and subsequent pleadings filed by the Plaintiff whether or not he seeks a determination against both Debtors. Counsel for the Plaintiff affirmed on the record at the trial that the Plaintiff only seeks a determination of nondischargeability against Stephen Vickrey (hereinafter the "Defendant").

At the conclusion of the trial, the Court entered an Order Requiring Post-Trial Briefs to be filed on or before September 25, 2018 by 12:00 p.m., Noon, CDT, specifically addressing how the testimony and evidence presented during the trial relates to each of the elements of the Plaintiff's causes of actions under

11 U.S.C. §§ 523(a)(2), (4), and (6).[1] On September 25, 2018, counsel for the Defendant timely filed his Post-Trial Brief, arguing that the Plaintiff failed to present any evidence at trial to support his claims of fraud, defalcation, and willful and malicious injury, nor any evidence of damages.[2]

Counsel for the Plaintiff failed to file a Post-Trial Brief as directed by order of the Court. Instead, after the deadline to file Post-Trial Briefs expired, counsel filed a Motion to Extend Deadline in the underlying case, not in this Adversary Proceeding, requesting an extension to September 26, 2018 or by the close of business on September 25, 2018 to file the Plaintiff's Brief. As grounds for the extension, counsel explained only that he had "been involved in numerous hearings since the order was decreed" on September 11, 2018. On September 26, 2018, the Court entered an Order Granting Motion to Extend Deadline, allowing the Plaintiff until September 27, 2018 by close of business to file a Post-Trial Brief.[3] Nonetheless, counsel for the Plaintiff failed once again to timely file a Post-Trial Brief even following the extension. Based upon the Court's review of all the testimony and evidence presented at trial, the arguments of counsel, the Defendant's Post-Trial Brief, and the applicable case law, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[4]

**FINDINGS OF FACT**

1. The following facts are taken from the parties' pretrial joint stipulations, the testimony at trial, and the evidence submitted by the Defendant. The Plaintiff failed to submit any documentary evidence at trial.

---

[1] Order Requiring Post-Trial Briefs, ECF No. 22.
[2] Post-Trial Brief Submitted by Defendant Stephen T. Vickrey, ECF No. 25.
[3] Order Granting Motion to Extend Deadline, ECF No. 26.
[4] To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. Alternatively, to the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

2. On September 5, 2018, the parties submitted a Joint Stipulation of Undisputed Facts and Disputed Issues pursuant to which they stipulated as follows:

   a. The Defendant, Stephen Timothy Vickrey, formed PSP Group, LLC, and filed same of record with the Madison County Probate Court and the Alabama Secretary of State's Office on November 22, 2013.

   b. PSP Group, LLC, was formed to own and operate a franchised Genghis Grill Restaurant in Florence, Alabama. As described by the Franchisor:

      'Genghis Grill is a fun and interactive Mongolian-style dining experience known for its fresh, hot and healthy food for over 20 years. Our guests are the creative chefs, customizing their bowls, their way. First, you start at our famous Fresh Bar, filling your bowl with over 80 hand-prepared veggies, meats, spices and sauces. Then, you head to our grill masters who cook your creation to perfection before your eyes on a large, circular grill. Lastly you sit back and enjoy your bowl, unique to your making.'

   c. PSP Group, LLC was originally formed by Stephen Timothy Vickrey and Tarous Rice who were both 50% members. When Tarous Rice backed out of the venture, the ownership of the LLC was amended to add Jerry Holt as a 33 1/3% member, and to reduce Stephen Timothy Vickrey's ownership to a 33 1/3% member. The Amendment was filed with the Madison County Probate Court and the Alabama Security of State's Office on August 7, 2014.

   d. The Genghis Grill Restaurant opened its doors at 2893 Florence Boulevard, Florence, Alabama in April of 2015. The business was losing money monthly and the parties to the LLC agreed to close the restaurant in September of 2017.[5]

3. In June of 2014, the Defendant met with the Plaintiff, with whom he has worked in the restaurant industry in various capacities for approximately fifteen years, and another individual, Rajiv Johar ("Johar"), to elicit the Plaintiff's assistance opening the restaurant. The Defendant testified that he told the Plaintiff upfront that he did not have the funds to open the restaurant on his own. While the Plaintiff testified that the Defendant verbally represented that he was good for his financial obligations to PSP Group, LLC ("PSP Group"), the Plaintiff does not allege, and no evidence was presented, that the Defendant gave the Plaintiff any statements in writing regarding his financial condition.

---

[5] Joint Stipulation of Undisputed Facts and Disputed Issues, ECF No. 20.

Case 18-80057-CRJ    Doc 28    Filed 10/01/18    Entered 10/01/18 15:26:42    Desc Main
Document      Page 3 of 11

4. Before the restaurant opened, both the Defendant and the Plaintiff signed a Lease Agreement as guarantors for the property with JAD Properties, Inc. They also each provided financial statements to Bancorp South to obtain a commercial loan for PSP Group. The Defendant testified that the financial statements which he provided to the bank were true and accurate. No evidence was presented to refute the Defendant's testimony.

5. After the restaurant opened in April of 2015, the Defendant's wife operated the restaurant on a daily basis as the Director of Operations while the Defendant provided weekly supervision. The Defendant's wife testified that she never received a salary because the restaurant was never profitable. Before the parties opened the restaurant, they had been provided information by the Franchisor reflecting yearly revenues between $1.2 and $1.7 million generated by a Genghis Grill Restaurant located in Memphis, Tennessee. Unfortunately, the Florence location of the Genghis Grill franchise averaged much less than projected with average sales of only $750,000 per year.

6. While the dates are not clear, the parties also entered into an agreement for the Defendant to operate three Checker's fast food restaurants in Nashville, Tennessee with the understanding that the Defendant's compensation would be based upon the profitability of the restaurants. The Checker's restaurants became unprofitable by November of 2016, after which the Defendant continued to operate the restaurants until April of 2017 without receiving a salary for approximately four months. In April of 2017, the Defendant turned the restaurants over to the Plaintiff when he left to seek employment elsewhere.

7. The Plaintiff testified that he loaned the Defendant an undisclosed amount of money to operate the Checker's restaurants. According to the Plaintiff, the Defendant eventually turned the stores back over to the Plaintiff with $20,000 owed for sales taxes. The Plaintiff testified that the Defendant promised to pay the debt, but still owes the Plaintiff $17,000.

8. The Defendant testified that he tried to pay the Plaintiff after the Genghis Grill closed in September of 2017, but lacked the ability to do so in part because he and his wife had both worked for a substantial

4

amount of time without receiving salaries while trying to operate the Genghis Grill and Checker's restaurants.

9. After the Plaintiff filed a civil suit against the Defendant in the Circuit Court of Marshall County, Alabama, the Defendant sought bankruptcy relief on January 8, 2018 by filing a joint Chapter 7 petition with his wife. On Schedule E/F, the Defendant listed an unsecured, non-priority debt owed to the Plaintiff in the amount of $20,000.

10. On June 7, 2018, the Plaintiff filed this Adversary Proceeding, seeking to have the debt owed to him declared nondischargeable.

## CONCLUSIONS OF LAW

"A Chapter 7 debtor is generally entitled to a discharge of all debts that arose prior to the filing of the bankruptcy petition. *See* 11 U.S.C. § 727(b). However, 'this 'fresh start' policy is only available to the 'honest but unfortunate debtor.'"[6] Congress enacted several exceptions to § 727(b)'s general rule of discharge, to ensure that only the honest but unfortunate debtors receive a Chapter 7 discharge.[7] Prior to trial, the Plaintiff stipulated that the only issues for trial included the following:

1. Whether the debt owed by the Defendant is nondischargeable under 11 U.S.C. § 523(a)(6) "as being based on a willful injury?"

2. Whether the debt owed by the Defendant is nondischargeable "as being incurred through false pretenses, false representations or actual fraud under § 523(a)(2)(A)?"[8]

At the conclusion of the trial, counsel for the Plaintiff argued that the debt owed by the Defendant is also nondischargeable under 11 U.S.C. § 523(a)(4) and requested permission to brief the issue, which the Court granted.

---

[6] *United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1326 (11th Cir. 2011)(*quoting In re Fretz,* 244 F.3d 1323, 1326 (11th Cir. 2001)).
[7] *Id.*
[8] Joint Stipulation of Undisputed Facts and Disputed Issues, p. 2, ECF No. 20.

5

The Plaintiff "bears the burden to prove, by a preponderance of the evidence, that a particular claim is nondischargeable under § 523(a)."[9] To effectuate the "fresh start" policy, the Court must strictly construe "exceptions to the general rule of discharge . . . in favor of the debtor."[10]

## I. 11 U.S.C. § 523(a)(2)(A)

The Plaintiff asserts that the Defendant had a duty and responsibility to the members of PSP Group to make payments as agreed under the terms of the lease agreement which both parties personally guaranteed and that the Defendant made oral misrepresentations in order to induce Plaintiff "into providing the funds that were used to enter into a long term lease of property" and to enable the Defendant to obtain the leased property, as he would not have otherwise been able "to obtain the financing to make such a lease."[11]

As recently explained by the Eleventh Circuit, and affirmed by the Supreme Court, the Bankruptcy Code creates "two mutually exclusive exceptions to discharge" for debts obtained by false pretenses, false representations or actual fraud under § 523(a)(2) as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
. . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

   (A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition;*

   (B) use of a *statement in writing* –

   (i) that is materially false;

   (ii) *respecting the debtor's or an insider's financial condition;*

---

[9] *Fretz v. United States*, 244 F.3d 1323, 1327 (11th Cir. 2001)(*quoting In re Griffith,* 206 F.3d 1389, 1396 (11th Cir. 2000).
[10] *Id.*
[11] Complaint to Determine Dischargeability, ¶27, ECF No. 1.

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; . . . [12]

"To prove that a debt is nondischargeable under § 523(a)(2)(A), a creditor must show that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation."[13] However, to avoid discharge of a debt induced by a statement respecting the debtor's financial condition, § 523(a)(2)(B) requires a creditor to "show reasonable reliance and that the statement was intentional, materially false, ***and in writing***."[14]

In this case, the Plaintiff asserts that the Defendant made certain oral misrepresentations at the time the parties formed PSP Group regarding his financial ability to pay his one-third share of any debts related to the business. When the Defendant approached the Plaintiff in June of 2014 regarding the business venture, the Defendant testified that he explained to the Plaintiff that he did not have the financial resources to open the restaurant. While the Plaintiff asserts that the Defendant made material and false representations regarding his financial condition, the Plaintiff presented absolutely no evidence that such statements were made in writing, nor any credible testimony regarding exactly what false verbal statements or misrepresentations were alleged to have been made. Accordingly, even if the Defendant made oral misrepresentations regarding his financial condition or ability to pay his one-third share of any PSP Group debts, such oral misrepresentations do not prevent the debt from being dischargeable under 11 U.S.C. § 523(a)(2)(A), as misrepresentations regarding a debtor's financial condition <u>must be in writing</u> to be excepted from discharge. As the Eleventh Circuit has explained, the requirement that statements regarding

---

[12] *Lamar, Archer & Cofrin v. Appling (In re Appling)*, 848 F.3d 953, 956 (11th Cir. 2017)(*quoting* 11 U.S.C. § 523(a)(2) as emphasized), *aff'd,* 138 S. Ct. 1752 (June 4, 2018).
[13] *In re Faidengold*, 577 Fed. Appx. 963, 964-65 (11th Cir. 2014).
[14] *In re Appling*, 848 F.3d at 957 (11th Cir. 2017)(emphasis added).

7

a debtor's financial condition be made in writing under § 523(a)(2)(B) "promotes accuracy and predictability in bankruptcy disputes that often take place years after the facts arose."[15]

The Plaintiff failed to present any evidence that the Defendant made any statements in writing regarding his financial condition for purposes of subparagraph (B), nor any evidence to support his claims of fraud or false pretenses for purposes of subparagraph (A). Indeed, the Plaintiff's testimony amounted to nothing more than a typical story involving investors who optimistically entered into a business venture and a partner who was subsequently unable to pay when the venture failed. "Were a creditor able to successfully argue that a debt is nondischargeable simply because a debtor failed to follow through on a future promise to pay, most bankruptcy debts would never discharge."[16] Accordingly, the Court finds that the debt at issue is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) or (B).

## II.     11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[17]  Under § 523(a)(4) fraud and defalcation "are actionable only if the debtor was a fiduciary of the creditor; whereas, embezzlement or larceny are actionable whether or not the debtor was a fiduciary."[18]  To hold a debt nondischargeable as a debt for defalcation under § 523(a)(4), the creditor must prove by a preponderance of the evidence that "(1) the debtor stood in a fiduciary relationship with the creditor; (2) the fiduciary relationship existed prior to the creation of the debt, (3) and the debt resulted from an act of defalcation."[19]

Here, the Plaintiff failed to present any evidence that the Defendant committed fraud, defalcation, larceny or embezzlement or that the Defendant stood in a fiduciary relationship with the Plaintiff for

---

15    *Id.* at 960.
16    *Yates v. Davis (In re Davis)*, 2013 WL 6796657 *2 (Bankr. M.D. Ala. 2013)(Sawyer, J.).
17    11 U.S.C. § 523(a)(4).
18    *Kern v. Taylor (In re Taylor)*, 551 B.R. 506, 518 (Bankr. M.D. Ala. 2016)(Sawyer, J.)
19    *Id*.

8

purposes of § 523(a)(4). The Plaintiff presented no evidence that the Defendant misappropriated any funds from PSP Group or that a special trust relationship existed between the parties prior to the creation of the debt. In fact, it is even unclear how much the Plaintiff asserts that the Defendant owes the Plaintiff and whether the alleged debt is based upon the Defendant's failure to satisfy his guarantee on the lease agreement which PSP Group entered into with JAD Properties, Inc., or whether the debt is for money that the Plaintiff asserts the Defendant failed to pay when he turned the Checker's restaurants back over to the Plaintiff.

Instead, the evidence established that both the Defendant and his wife worked for PSP Group without compensation for a substantial period of time. The Defendant's wife testified that she never drew a salary from Genghis Grill because the restaurant never became profitable. The Defendant further testified that he did not borrow money from the Plaintiff and was owed money by PSP Group after the restaurant closed. Based upon the complete lack of evidence presented on this issue, the Court finds that the Plaintiff failed to establish by a preponderance of the evidence that the Defendant misappropriated any funds or property for purposes of dischargeability of the debt pursuant to § 523(a)(4).

### III.  11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[20] "Exceptions to discharge are construed strictly to give effect to the fresh start policy of the Bankruptcy Code."[21] Accordingly, the Plaintiff must prove each element of § 523(a)(6) by a preponderance of the evidence.[22]

"A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury."[23] The Eleventh Circuit has

---

[20]  11 U.S.C. § 523(a)(6).
[21]  *Smith v. Golatte (In re Smith)*, 2011 WL 3862210 *2 (Bankr. M.D. Ala. 2011)(Williams, J.).
[22]  *Id.*
[23]  *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012).

9

held that "proof of 'willfulness' requires 'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'"[24] Section 523(a)(6) does not reach a mere "failure to meet a duty of care that results in injury to someone."[25]

Section 523(a)(6) requires the debtor's conduct to not only be willful, but also malicious. "'Malicious' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."[26] To establish malice for purposes of § 523(a)(6), "a showing of specific intent to harm another is not necessary."[27]

Here, the Plaintiff alleges that the Defendant willfully injured him by misrepresenting his financial status and ability to pay when the Defendant had knowledge or should have known that he did not possess the financial resources to back his obligations to PSP Group. The Plaintiff has not alleged that the Defendant's acts were also malicious for purposes of § 523(a)(6). In addition, the Plaintiff failed to present any evidence at trial that the Defendant committed a deliberate or intentional act the purpose of which was to cause injury or which was substantially certain to cause injury. Instead, the testimony merely reveals that the parties were members of PSP Group which was formed to operate a Genghis Grill Restaurant in Florence, Alabama and that the Defendant was unable to pay his share of the LLC's debts when the venture failed. Nothing more was shown by the evidence presented at trial.

As the parties agreed, the Defendant's wife managed the restaurant on a daily basis as the Director of Operations and the Defendant provided weekly supervision while performing similar services for the Checker's restaurants. The Defendant's wife never received a salary during the entire time the restaurant remained opened between April 2015 and September 2017. The Defendant also failed to receive a salary between January and April of 2017 because the Checker's restaurants were unprofitable. After the parties agreed to close the Genghis Grill in September of 2017, the Defendant was unable to pay the business

---

[24] *In re Jennings*, 670 F.3d at 1334.
[25] *Loucks v. Smith (In re Smith)*, 531 B.R. 1, 12 (Bankr. M.D. Ala. 2015)(Sawyer, J.).
[26] *In re Jennings*, 670 F.3d 1334(*quoting In re Walker,* 48 F.3d 1161, 1164 (11th Cir. 1995)).
[27] *Beem v. Ferguson*, 713 Fed. Appx. 974, 984 (11th Cir. 2018).

Case 18-80057-CRJ    Doc 28    Filed 10/01/18    Entered 10/01/18 15:26:42    Desc Main
Document      Page 10 of 11

related debts which PSP Group incurred while both he and his wife failed to receive a salary for a substantial period of time.

Based upon the testimony of the parties and witnesses, the Court finds that the Plaintiff failed to establish by a preponderance of the evidence that the Defendant committed a deliberate or intentional act the purpose of which was to cause injury or which was substantially certain to cause injury, nor that any acts of the Defendant were malicious for purposes of dischargeability of the debt pursuant to § 523(a)(6).

## CONCLUSION

The Plaintiff failed to establish by a preponderance of the evidence that the debt owed by the Defendant is nondischargeable under 11 U.S.C. § 523(a)(2), (4) or (6). There is no evidence that the Defendant obtained money under false pretenses for purposes of § 523(a)(2)(A). Indeed, the Plaintiff only asserts that the Defendant made vague oral misrepresentations regarding his financial condition and that he failed to pay his respective portion of business debts associated with the parties' failed business ventures. To the extent the Plaintiff asserts that the Defendant made oral misrepresentations regarding his financial condition, § 523(a)(2)(B) bars discharge of debts arising from a materially false statement respecting a debtor's financial condition only if the statement is in writing. The Plaintiff failed to allege in his Complaint and failed to present any evidence that the Defendant committed fraud or defalcation while acting in a fiduciary capacity for purposes of § 523(a)(4). Finally, the Plaintiff failed to meet his burden to prove that the Defendant's actions were willful and malicious for purposes of § 523(a)(6) when the Defendant failed satisfy his obligations under the lease guaranty executed by PSP Group. Accordingly, the Court finds that the debts owed by the Defendant to the Plaintiff are subject to discharge. A separate judgment consistent with this Memorandum Opinion will be entered in favor of the Defendant and against the Plaintiff as to all counts.

**IT IS SO ORDERED** this the 1st day of October 2018.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge
